UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUMMERFALL GROUP, LLC,<br><br>                  Plaintiff,<br><br>    v.<br><br>STEPHEN J. HATCH,<br><br>                  Defendant. | Case No. 1:14-CV-00402-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Plaintiff Summerfall Group LLC's Motion for Summary Judgment (Dkt. 20). Having heard oral argument and being otherwise fully advised, the Court issues the following memorandum decision and order granting the motion.

## FACTUAL BACKGROUND

Plaintiff Summerfall Group, LLC ("Summerfall") is an Idaho limited liability company. On or about October 10, 2007, Defendant Stephen J. Hatch ("Hatch") executed a Pledge Note in favor of Summerfall in the amount of $500,000.00 Gee Decl., Dkt. 22, Ex. A. Under the terms and conditions of the Pledge Note, for value received, Hatch agreed to pay Summerfall the principal sum of $500,000.00 at 0% interest per

**MEMORANDUM DECISION AND ORDER - 1**

annum no later than October 1, 2010. *Id*. On the same date, Hatch and Summerfall also executed a Pledge Agreement. *Id*., Ex. B. Hatch personally guaranteed the Pledge Note's obligations with regard to the guaranteed payment to Summerfall of the $500,000.00 loan principal. *Id*. Hatch also agreed to assign to Summerfall and grant a security interest in 3.5% of Hatch's membership interest in PLNU-B-SCIENCE-B, LLC ("PLNU"), as collateral on the loan. *Id*. Per the Pledge Agreement, Hatch executed an Assignment of Proceeds of Certain Membership Interest in PLNU-B-SCIENCE-B, LLC ("PLNU Assignment") in favor of Summerfall, agreeing to distribute all proceeds from 3.5% of his membership interest therein. Hatch Decl., Dkt. 27-2, Ex. C. Additionally, the Pledge Agreement included a "Residual Financial Return" provision providing that:

> In lieu of interest payments payable from the Pledgor to the Lender during the term of the Pledge Note, Lender shall receive a financial interest in the value of the Pledge PLNU Membership Interests and any income or revenue stream attributed to the Pledge PLNU Membership Interests. This right shall exist both during the term of the Pledge Note and shall continue as a residual right of Lendor even after the repayment of the $500,000 loan principal by Pledgor.

*Id*.

In the fall of 2010, Summerfall agreed to an extension on the maturity date of the Pledge Note on a month to month basis in exchange for Hatch's agreement to pay Summerfall interest at the rate of 12% to be paid at the rate of $5,000 per month on the first day of each month beginning October 1, 2010. Gee Decl., ¶ 6. Emails were exchanged between Summerfall and Brad Heinrichs, who was Hatch's partner and Director of Investor Relations. Hatch Decl., Ex. D. This "extension agreement," as it is

**MEMORANDUM DECISION AND ORDER - 2**

called by Hatch, was to go through January 2011.  *Id.*   It was agreed between Summerfall and Hatch that payment of interest only on a month to month basis would allow Hatch an opportunity to liquidate assets in order to pay the principal amount of $500,000.00.   Gee Decl., ¶ 6.

On or about February 11, 2011, Summerfall allegedly sent Hatch a letter demanding payment of the loan in full but Hatch never received it.  Hatch Decl., ¶ 12, Ex. F.  On March 2, 2011, Hatch said in an email to Summerfall that he understood the $5,000.00 interest payment would be sufficient until Hatch could repay the loan in full. *Id.*, ¶ 13.  Summerfall responded with a demand for immediate repayment of the loan, and at the same time requesting "an outline for [Hatch's] repayment strategy to be currently commenced."  Hatch Decl., ¶ 14, Ex. F.  Between March 3, 2011, and March 10, 2011, Summerfall and Hatch engaged in email communications wherein Summerfall allowed another extension of time up through June 15, 2011.  *Id.* ¶ 15, Ex. F.

Hatch made one interest payment in 2013 in the amount of $30,000, which was received on or about July 1, 2013.  Hatch made no further interest payments.  These payments, which were made at irregular intervals through 2010, 2011, 2012, and 2013, ultimately totaled $160,000.00.  Gee Decl., ¶¶ 6-7, Ex. C, D.  On or about July 22, 2013, Summerfall made written demand that Defendant Hatch pay Summerfall the $500,000.00 principal amount of the Note, which Summerfall contended was due and owing.  Gee Decl., Ex. E; Hatch Decl., Ex G.  Since that demand, Hatch has not paid, and refuses to pay, the amount Summerfall contends is due and owing under the Pledge Note.

**MEMORANDUM DECISION AND ORDER - 3**

Between September 27, 2013, and December 3, 2013, Summerfall and Hatch communicated in emails about setting up a meeting to discuss payment arrangements and a draft repayment proposal. Hatch Decl., ¶ 20, Ex. H. On or about December 7, 2013, Summerfall sent Hatch an email indicating that a draft agreement "would be great" and requested payment of the June through December 2013 interest payments. *Id.* ¶ 21, Ex. H.

On or about December 23, 2013, Summerfall again emailed Hatch requesting payment of the June through December 2013 interest amounts and said that Summerfall was "look[ing] forward to the receipt of the draft proposal as well . . ." Hatch Decl., ¶ 22, Ex. I. Based on this communication, Hatch believed Summerfall was willing to enter into a new repayment agreement. *Id.*, ¶ 23. No signed agreement of a new repayment plan ensued, however, and after July 2013, Hatch made no interest, or other, payments to Summerfall. Summerfall filed suit on September 19, 2014. (Dkt. 1.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant

**MEMORANDUM DECISION AND ORDER - 4**

unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact

**MEMORANDUM DECISION AND ORDER - 5**

exists.  *Celotex*, 477 U.S. at 324.

## DISCUSSION

The Court will address the various defenses raised by Defendant in his opposition to Plaintiff's motion for summary judgment before getting to the merits of Plaintiff's claims.

**1.    Waiver**

According to Hatch, Summerfall failed to properly provide notice of breach and that by continuing to accept interest only payments from Hatch, Summerfall waived its right to sue Hatch for breach of the Pledge Note and Pledge Agreement.  (Dkt. 27, p. 3.)

Under the Pledge Note, the "failure of the Holder hereof to exercise any of the foregoing options [in the Event of Default] shall not constitute a waiver of the right to exercise the same upon the occurrence of a subsequent default."  Hatch Decl., Ex. A. Similarly, the Pledge Agreement contains a "No Waiver of Rights or Remedies" provision which provides that "no failure or delay by Lender [Summerfall] in exercising any right, power or privilege under the Pledge Note or this Pledge Agreement shall operate as a waiver thereof, and no single or partial exercise thereof shall preclude any other or future exercise of any other right, power or privilege."  *Id.*, Ex. B.

Non-waiver clauses are valid under Texas law.[1]  *See In re GuideOne National Ins. Co.*, 2015 WL 5766496, *3 (Tex. App.-Amarillo, Sept. 29, 2015) (citing a Texas case

---

[1] The Pledge Agreement contains a choice of law provision for Texas law.  Hatch Decl., Ex. B.

**MEMORANDUM DECISION AND ORDER - 6**

from 1897 upholding a non-waiver clause); *Breof BNK Tex., L.P. v. D.H. Hill Advisors, Inc.*, 370 S.W.3d 58, 66 (Tex.App.-Houston, 2012). Even so, non-waiver clauses are themselves waivable when the parties' words and conduct demonstrate that it has been "unequivocally manifested" that a party no longer intends to assert the right in question. *DPRS 15th Street, Inc. v. Texas Skyline, Ltd.*, 2014 WL 4058796, *8 (Tex.App.-Austin, Aug. 13, 2104).

Hatch has not argued that Summerfall waived the non-waiver clause but even if he had, there is no evidence that Summerfall "unequivocally manifested" an intent to no longer assert a breach of the Pledge Note and Agreement. In *Guzman v. Ugly Duckling Car Sales of Texas, LLP*, the court held that even though the car dealer had previously accepted a car buyer's late payments without pursuing a remedy under the contract, the car dealer did not intend to waive the non-waiver clause. 63 S.W.3d 522, 528 (Tex.App.-San Antonio, Nov. 7, 2001).

On this record, the non-waiver clause is enforceable. Accordingly, even if Summerfall had not pursued its rights and remedies under the Pledge Note and Agreement when Hatch first defaulted, that does not prevent Summerfall from seeking recovery from Hatch now. Summerfall did not waive its rights under the Pledge Note and Agreement. Hatch's waiver defense fails.

2. **Novation**

Hatch argues in the alternative that through oral agreement and conduct of the parties, Summerfall and Hatch agreed upon interest only payments up through June

**MEMORANDUM DECISION AND ORDER - 7**

2011, a deviation from the contract terms. Hatch contends this agreement served as a novation of the original Pledge Note, thereby extinguishing any further obligation under the Pledge Note.

Novation occurs when parties substitute a new agreement in place of an existing agreement between the same parties. Novation is an affirmative defense to a claim for breach of contract, and Defendant bears the burden of proof in establishing such a defense. *In the Interest of B.N.L.-B*, 375 S.W.3d 557, 562 (Tex.App.-Dallas, 2012). To establish novation, the party must prove: (1) a previous valid obligation; (2) an agreement of the parties to a new contract; (3) the extinguishment of an old contract; and (4) the validity of the new contract. *Id*. "In the absence of inconsistent provisions, 'a second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first.' " *Fulcrum Cent. v. AutoTester, Inc.*, 102 S.W.3d 274, 277 (Tex.App.-Dallas, 2003) (quoting *Chastain v. Cooper & Reed*, 257 S.W.2d 422, 424 (Texas 1953)). Whether a subsequent agreement works a novation of an earlier agreement is a question of intent. *Id*. The parties must have clearly intended a novation and a novation is never presumed. *White v. Harrison*, 390 S.W.3d 666, 675 (Tex.App.-Dallas 2012, no pet.); *Fulcrum Cent.*, 102 S.W.3d at 278. "In the absence of express agreement, whether a new contract operates as a novation of an earlier contract is 'usually a question of fact, and can only become a question of law when the state of the evidence is such that reasonable minds cannot differ as to its effect.' " *Fulcrum Cent.*, 102

**MEMORANDUM DECISION AND ORDER - 8**

S.W.3d at 278 (quoting *Chastain*, 257 S.W.2d at 424).

Hatch has not proven that there was a novation. For a period of time Summerfall accepted interest only payments in the amount of $5,000 a month, which were paid at irregular intervals by Hatch. These payments ultimately totaled $160,000.00. In an email dated September 13, 2010, Summerfall member David Gee wrote that "Summerfall members have agreed to [Hatch's] offer of 12% annual interest paid on a monthly basis at the beginning of the month for a limited time through January 2011 . . ." Hatch Decl, Ex. D. In March 2011, there is an email exchange between David Gee and Hatch in which Gee requests immediate return of the principal and that Summerfall will extend an additional three months "under the same conditions," through June 2011, but with an immediate return of the $500,000.00 principal by June 15, 2011. *Id.*, Ex. F. Hatch made his last interest-only payment in 2013. In an email dated September 27, 2013, Summerfall wrote to Hatch: "Regardless of previous conversations or communication, our business relationship with you remains ambiguous at the present time. There is no contract in place and merely a verbal agreement to pay interest that comes at variable intervals." *Id.*, Ex. H. Hatch contends that Summerfall's acceptance of the interest only payments for three years implies an intention by the parties to abandon the original repayment obligation.

Such evidence does not establish as a matter of law that Summerfall agreed to accept interest only payments and relinquish its right to collect the principal amount of $500,000.00. Summerfall made no agreement to accept interest-only payments

**MEMORANDUM DECISION AND ORDER - 9**

indefinitely, in lieu of the payment of the principal. Rather, the communications show that Summerfall agreed to interest-only payments through June 2011, to be followed by a then immediate repayment of the principal amount. Such details neither fit the theory of Hatch's purported novation, nor is there evidence in the record that there was to be a substitution and discharge of the obligations in the Pledge Note. Instead, Summerfall makes repeated requests for return of the principal, negating Hatch's contention that there was an *agreement* that the obligation in the Pledge Note be extinguished and replaced by interest-only payments.

In summary, there is no evidence that Summerfall ever intended to replace the obligation in the Pledge Note with a new obligation. While Texas courts recognize that novation is typically a question of fact, the Court concludes the absolute dearth of evidence in support of Hatch's novation defense is such that reasonable minds could not differ.[2] There was no new, valid contract formed that replaced the previous, valid contract (the Pledge Note). Plaintiff's novation defense fails.

### 3.   Accord and Satisfaction

Lastly, Hatch contends that Summerfall agreed to accept the PLNU shares in full

---

[2] Additionally, assuming arguendo that there was a novation, the Texas statute of frauds requires that a "an agreement which is not to be performed within one year from the date of making the agreement" must be in writing and signed "by the person to be charged with the promise." Tex. Bus. & Comm. Code § 26.01. Interest payments in the amount of $5,000 a month (even in an undefined amortization) could not possibly satisfy repayment of a principal amount of $500,000.00 within one year and therefore any such agreement would be subject to the Texas statute of frauds. Because such an agreement is not in writing and signed, such an agreement would be unenforceable.

**MEMORANDUM DECISION AND ORDER - 10**

accord and satisfaction of the $500,000.00 due under the Pledge Note. Additionally (despite the terms of the Pledge Agreement, which provided that the dividends and proceeds from the company would be accepted *in lieu of* interest payments), Hatch made interest payments *in addition* thereto, in excess of $160,000, which according to Hatch demonstrates a mutual agreement between the parties to accept a lesser payment in full satisfaction of the Pledge Note.

An accord and satisfaction exists when parties agree to discharge "an existing obligation in a manner other than in accordance with the terms of their original contract." *Avary v. Bank of Am., N.A.*, 72 S.W.3d 779, 788 (Tex.App.-Dallas, 2002). The affirmative defense involves a new contract, either express or implied, in which the existing obligation is released by agreement of the parties through "means of [a] lesser payment tendered and accepted." *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969). Evidence must demonstrate "both parties agreed the amount paid by the debtor to the creditor fully satisfied the entire claim." *Avary*, 72 S.W.3d at 788. Because a valid accord and satisfaction depends upon an agreement, it "only occurs when the parties mutually [assent] to it." Their intention is the controlling element. *McCarty v. Humphrey*, 261 S.W. 1015, 1016 (Tex. Comm'n App. 1924).

As with novation, Hatch cannot prove there was any new agreement, express or implied, to accept a lesser payment of $160,000.00, whether with or without the assignment of Hatch's membership interest and the value of the proceeds and dividends, in full satisfaction of the loan.

**MEMORANDUM DECISION AND ORDER - 11**

The Court agrees with Summerfall that the Pledge/Assignment of an interest in PLNU cannot operate as an accord and satisfaction. The Assignment of the proceeds and dividends of Hatch's membership interest was made at the same time as the Pledge Note and Pledge Agreement to secure the Pledge Note. There is no evidence, nor any sense, to support the proposition that this was to operate as an accord and satisfaction of the Note

Nor was there a meeting of the minds indicating mutual asset that the $160,000.00 paid in interest by Hatch was to operate as a satisfaction of the entire $500,000.00 owed under the Pledge Note, an amount more than three times the total interest paid. The record contains repeated instances of Summerfall making reference to and demanding payment of the entire $500,000.00. There are numerous references in the email exchanges to Summerfall's expectation that the $500,000.00 was still to be paid in full. For example, on March 10, 2011, Summerfall member David Gee wrote that Summerfall was willing to extend an additional 3 months "but with return of our 500K principal by June 15, 2011." Hatch Decl., Ex. F. Accordingly, as a matter of law, there was no accord and satisfaction, and Hatch's affirmative defense of the same fails.

 4. **Breach of Contract**

A breach of contract is found with: (1) the existence of a valid contract, (2) the performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. *Rice v. Metro Life. Ins. Co.*, 324 S.W.3d 660, 666 (Tex.App.-Fort Worth, 2010).

Summerfall has proven each of the elements of breach of contract beyond any

**MEMORANDUM DECISION AND ORDER - 12**

genuine issue of material fact.  There was a valid contract in the Pledge Note and Pledge Agreement between Summerfall and Defendant Hatch.  Hatch does not dispute that this was a valid agreement.  Summerfall performed by making the loan to Hatch of $500,000.00.  Hatch "promise[d]s to pay to the order of the Summer Fall Group, LLC ("Payee"), the principal sum of Five Hundred Thousand Dollars ($500,000.00) with interest thereon at zero percent (0%) per annum no later than October 1, 2010."  Gee Decl., Ex. A.

Hatch did not pay the $500,000.00 by October 1, 2010.  When 30 days passed without Hatch making payment of the principal amount, the Pledge Note was breached.  Hatch has not proven any of his affirmative defenses to breach of contract.   When Hatch did not pay Summerfall, Summerfall was damaged as a result of Hatch's breach.  Hatch personally guaranteed the Pledge Note.  Accordingly, summary judgment will be granted on Summerfall's breach of contract and personal guaranty claims.

//
//
//
//
//
//
//
//

**MEMORANDUM DECISION AND ORDER - 13**

## ORDER

**IT IS THEREFORE ORDERED** that Plaintiff Summerfall's Motion for Summary Judgment (Dkt. 20) is **GRANTED**.

Plaintiff shall submit a proposed judgment to the Court within 10 days of this Order.

DATED: **June 15, 2016**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge